**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

FAUSTO ARTHUR CRUZ-HERNANDEZ,

Petitioner,

v.

UNITED STATES OF AMERICA,

Respondent.

CASE NO. 1:14-CR-201-LJO-BAM-1
1:15-CV-2326-LJO

MEMORANDUM DECISION AND ORDER RE PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE, PURSUANT TO 28 U.S.C. § 2255 AND MOTION TO PROCEED IFP

(Docs. 24, 27, 28)

Petitioner Fausto Arthur Cruz-Hernandez ("Petitioner"), a federal prisoner proceeding pro se, has moved to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 ("§ 2255") (Docs. 24 & 27) [1], along with an application to proceed *in forma pauperis* ("IFP") (Doc. 28). In accordance with orders by this Court (Docs. 25, 34, 35, 40), the Government filed two opposition briefs to Petitioner's motion (Docs. 29, 45), Petitioner's former attorney filed a sworn declaration (Doc. 42), and Petitioner filed a reply (Doc. 48).

For the reasons below, the Court DENIES Petitioner's § 2255 motion as to his claims regarding the Court's jurisdiction, and two of his claims regarding ineffective assistance of counsel and DENIES his motion to proceed IFP. However, the Court GRANTS Petitioner's unopposed request for an evidentiary hearing for the limited purpose of resolving Petitioner's claim that his

[1] On October 13, 2016, the Court granted Petitioner leave to amend his original § 2255 motion (Doc. 24). Doc. 31. The amended Motion adds new arguments based on certain information that Petitioner received in the mail subsequent to filing his first motion. Doc. 26.

former attorney was ineffective in that she failed to file a notice of appeal after Petitioner requested that she do so.

**BACKGROUND**

**A. Indictment and Plea Agreement**

On September 11, 2014, Petitioner was indicted by a federal grand jury on the charge of bank robbery. Doc. 1 at 1-2. The indictment charged that Petitioner

> …by force, violence and intimidation did take from the person or presence of another money, namely approximately $2,500, belonging to and in the care, custody, control and management of Bank of the West, located at 7062 North First Street, Fresno, California, a bank whose deposits were then insured by the Federal Deposit Insurance Corporation. All in violation of Title 18, United States Code, Section 2113(a).

*Id.*

On November 10, 2014, Petitioner executed a plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). Doc. 18 at 1. It provides, in relevant part:

> 2. Nature, Elements and Possible Defenses
>
> The defendant has read the charge against him contained in the indictment and that charge has been fully explained to him by his attorney … Further, the defendant fully understands the nature and elements of the crimes in Count One of the indictment to which he is pleading guilty, together with the possible defenses thereto, and has discussed them with his attorney …
>
> COUNT 1 – Bank Robbery
>
> The elements of the crime of bank robbery are:
>
> First, the defendant took money belonging to Bank of the West;
> Second, the defendant used force and violence, or intimidation in doing so; and
> Third, the deposits of Bank of the West were then insured by the Federal Deposit Insurance Corporation.
>
> 3. Agreements by the Defendant
>
> …

(b) Defendant agrees to enter a plea of guilty to Count 1 of the indictment which charge[s] him with bank robbery in violation of Title 18, United States Code, Section 2113.

…

(e) Defendant knowingly and voluntarily waives his Constitutional and statutory rights to appeal his plea, sentence and conviction except as set forth within this paragraph. The defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal any sentence imposed. Acknowledging this, the defendant knowingly and voluntarily agrees to waive all Constitutional and statutory rights to appeal his conviction and sentence, including but not limited to an express waiver of appeal of this plea (including any venue and statute of limitations issues) and to attack collaterally his mental competence, and his plea, or his sentence, including but not limited to, filing a motion under 28 U.S.C. § 2255, 28 U.S.C. § 2241, or 18 U.S.C. § 3742, or otherwise.

…

(f) Defendant further acknowledges that his plea of guilty is voluntary and that no force, threats, promises or representations have been made to anybody, nor agreement reached, other than those set forth expressly in this agreement, to induce the defendant to plead guilty.

…

(j) The defendant understands that the Court must consult the Federal Sentencing Guidelines (as promulgated by the Sentencing Commission pursuant to the Sentencing Reform Act of 1984, 18 U.S.C. §§ 3551-3742 and 28 U.S.C. §§ 991-998, and as modified by *United States v. Booker* and *United States v. Fanfan*, 543 U.S. 220 (2005)), and must take them into account when determining a final sentence. Defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines. …

<u>5. Factual Basis</u>

On July 22, 2014, the defendant presented a note to a teller at Bank of the West at 7062 N. First Street in Fresno. The note said, "I want $50,000," and "This is a robbery." The defendant said, "hundreds only." The teller gave the hundreds in her drawer, and he asked what else she had. She said nothing else.

The teller attempted to push the alarm button, but the defendant saw what she was doing and said, "don't push the button, put your hands up." He lifted a black bag he was carrying, reached in and pulled out what the teller recognized as a flat black semi-automatic handgun, and told the tellers to "get on the floor." The tellers got down on the floor and the defendant left the bank. On August 24, 2014, the defendant was arrested.

> Post-Miranda, the defendant admitted to robbing Bank of the West. He admitted to using a gun, but said that it was not a real gun.
>
> Bank [of the West] deposits are insured by the Federal Deposit Insurance Corporation (FDIC).
>
> 6. Potential Sentence
>
> The following is the maximum potential sentence which defendant faces:
>
> COUNT 1:
>
> (a) Imprisonment.
> Minimum: None.
> Maximum: Twenty years imprisonment
> …
>
> 7. Waiver of Rights
>
> Defendant understands that by pleading guilty he surrenders certain rights, including the following:
>
> (a) If defendant persisted in a plea of not guilty to the charges against him, he would have the right to be represented by an attorney at all stages of the proceedings, and would have a right to a public and speedy trial …
>
> Defendant understands that by pleading guilty he is waiving all of the rights set forth above and defendant's attorney has explained those rights to him and the consequences of his waiver of those rights.

Doc. 13 at 1-8.

**B. Change of Plea Hearing**

On November 17, 2014, Petitioner and his former attorney Peggy Sasso ("Ms. Sasso") appeared before this Court for his change of plea hearing, where he pleaded guilty to the count in the indictment, pursuant the plea agreement. Docs. 13, 14; Rough Transcript of November 17, 2014 Change of Plea Proceedings ("Plea Tr.").

During the plea colloquy, Petitioner affirmed to the Court that he wanted to change his plea from not guilty to guilty. Plea Tr. at 1:17-22. He told the Court that he can read English, acknowledged that he recognized the signature on the plea agreement as his own, that his signature on the plea agreement meant that he had the chance to review the entire document with the help of

Ms. Sasso, that Ms. Sasso answered any questions to his satisfaction, and that he had no more questions about the plea agreement. *Id.* at 1:23; 2:1-9. Petitioner affirmed that he understood the elements of the crime to which he was pleading guilty, that he understood the factual basis set forth in the plea agreements, and that those facts were true. *Id.* at 2:10-16. He stated that he understood that the maximum possible sentence he faced is 20 years' imprisonment, the maximum fine is $250,000, and he could face both the fine and imprisonment. *Id.* at 2:17-25. Petitioner also stated that he understood that he would be waiving his right to appeal by signing the plea agreement. *Id.* at 3:1-3. Petitioner affirmed his understanding that the decision whether to plead guilty was his own, and that if he wished to continue to plead not guilty, the Court would set the matter for trial in a timely fashion by judge or jury, during which he would have the right to testify and call witnesses *Id.* at 3:10-25; 4:1-13 The Court informed him that by pleading guilty, he would give up his rights to a trial, and Petitioner affirmed his understanding of these rights and that he wished to give these rights up *Id.* at 4:11-15. He moreover stated that no one was forcing or threatening him to plead guilty and that no one had promised him something other than what was contained in the plea agreement. *Id.* at 4:15-20. The Court proceeded to read the charge[2] contained in the Indictment, and Petitioner pleaded guilty to this charged offense. *Id.* at 5:7-25; 6:1-11. The Court then accepted Petitioner's plea as knowing, intelligent, and voluntary. *Id.* at 6:12-14.[3]

**C. Sentencing**

According to Petitioner's Presentence Investigation Report ("PSR") (Doc. 16), his total offense level was 29, after considering that the property of a financial institution was taken, that Petitioner "displayed" what the victim perceived as a firearm, Petitioner's career offender status, and acceptance of responsibility. PSR at ¶¶ 16-27. Petitioner's extensive criminal record and the fact that he had committed the charged offense while under a sentence of supervised release, along with his career offender status, resulted in his criminal history category designation of VI. *Id.* at ¶¶ 29-39. At a total offense level of 29 and a criminal history category of VI, the applicable range

[2] Although the Indictment charges that Petitioner took the money "by force, violence, and intimidation," upon agreement by both parties, the Court took Petitioner's plea as taking the money "by force, violence or intimidation." RT at 5:23-25; 6:1-11.

[3] Petitioner additionally admitted to two charges that he violated the terms of his supervised release in a different case. *Id.* at 7:11-25; 8:1-8. The Court accepted Petitioner's admissions as knowing, intelligent, and voluntary. *Id.* at 8:9-11.

from the Sentencing Guidelines is 151 to 188 months. *Id.* at 15. The PSR recommended a sentence of 151 months, at the bottom end of the Guidelines range. *Id.* at 15-16.

Petitioner was sentenced by this Court on February 23, 2015. Doc. 21; Sentencing Transcript ("Sent. Tr."). At sentencing, Petitioner affirmed that he had reviewed the PSR with Ms. Sasso. Sent. Tr. at 1:11-13. Furthermore, Ms. Sasso argued that Petitioner's "unique history and characteristics" warranted a 120-month sentence, which she believed sufficient to account for the facts of the underlying conduct and to accomplish the goals of sentencing. *Id.* at 2:7-25. Ms. Sasso also argued that Petitioner was "not a career criminal under the ordinary, common sense understanding of the term," and that Petitioner's criminal history did not actually fit into what Congress intended by passing the Armed Career Criminal Act. *Id.* at 3:1-25; 4:1-25; 5:1-12. In response, the Government argued that "[s]afety of the community is paramount in this case," that Petitioner's background does fit within what was intended for a career offender, and noted that the victims in this case were "severely traumatized" by Petitioner's crime. *Id.* at 5:17-25; 6:1-15. For these reasons, the Government requested that the Court sentence Petitioner to a 188-month term of imprisonment. *Id.* at 6:16-18. After the matter was submitted, the Court sentenced Petitioner to a 168-month term of imprisonment for Count 1 and a 20-month term of imprisonment for a violation of Petitioner's supervised release in a different criminal case, to be served concurrently, for a total term of 188 months of imprisonment. *Id.* at 8:23-25; 9:1-3; 11:3-7.

**STANDARD OF REVIEW**

A federal prisoner making a collateral attack on the validity of his conviction or sentence must do so by way of a motion to vacate, set aside or correct the sentence pursuant to 28 U.S.C. § 2255, filed in the court which imposed the sentence. *United States v. Monreal*, 301 F.3d 1127, 1130 (9th Cir. 2002). A § 2255 motion entitles the prisoner to relief "[i]f the court finds that … there has been such a denial or infringement of the constitutional rights of the prisoner." 28 U.S.C. § 2255(b). To warrant relief, a petitioner must demonstrate the existence of an error of constitutional magnitude that had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

Moreover, a knowing and voluntary waiver of the right to collateral attack in a negotiated plea agreement is enforceable in federal court. *United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir. 1993). “The sole test of a waiver's validity is whether it was made knowingly and voluntarily.” *United States v. Anglin*, 215 F.3d 1064, 1068 (9th Cir. 2000). In determining whether a waiver was knowingly and voluntarily made, courts consider “the express language of the waiver and the facts and circumstances surrounding the signing and entry of the plea agreement, including compliance with [Fed. R. Crim. P. 11].” *United States v. Nguyen*, 235 F.3d 1179, 1182 (9th Cir.2000). However, “in the context of § 2255 challenges brought by federal prisoners, … waivers cannot bar [ineffective assistance of counsel] claims associated with the negotiation of plea agreements.” *Washington v. Lampert*, 422 F.3d 864, 870 (9th Cir. 2005).

“When a district court reviews a § 2255 habeas motion, ‘[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall … grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.’” *United States v. Withers*, 638 F.3d 1055, 1062 (9th Cir. 2010) (quoting 28 U.S.C. § 2255). The court need not hold an evidentiary hearing where the prisoner’s allegations, when viewed against the record, either do not state a claim for relief or are “so palpably incredible or patently frivolous as to warrant summary dismissal.” *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996) (internal citations omitted). Thus, an evidentiary hearing is only required if (1) the prisoner “allege[s] specific facts which, if true, would entitle him to relief; and (2) the petition, files, and record of the case cannot conclusively show that he is entitled to no relief.” *United States v. Howard*, 381 F.3d 873, 877 (9th Cir. 2004).

**ANALYSIS**

Petitioner first argues that his indictment was defective because it failed to allege that Bank of the West was a member of the Federal Reserve System and that its deposits were insured by the Federal Deposit Insurance Corporation (“FDIC”) at the time of his offense, which under his interpretation of 18 U.S.C. § 2113(f), is required for his indictment to be constitutionally valid, and that this Court, therefore, lacked subject matter jurisdiction over his case. Doc. 27 at 25-33. Petitioner further argues that Ms. Sasso was ineffective, in violation of his Sixth Amendment rights,

because she: (1) failed to recognize and inform Petitioner of the alleged deficiencies in his indictment; (2) failed to challenge the Court's use of certain Sentencing Guidelines; (3) failed to file a notice of appeal and/or failing to request the appointment of new counsel for the appeal. *Id.* at 33-37. Petitioner requests an evidentiary hearing on the matters contained in his motion. *Id.* at 37.

The Government's first opposition brief sets forth two arguments. *See* Doc. 29 at 1 n.1, 2. First, the Government contends, albeit somewhat implicitly, that Petitioner waived his right to assert his second argument concerning his counsel's performance as part of his plea bargain. *See id.* at 1 n.1. Second, the Government contends that Petitioner's first and third ineffective assistance of counsel claims fail because the indictment alleged that the subject bank was FDIC-insured, and it was not necessary for the indictment to allege that the bank was FDIC-insured <u>and</u> a member of the Federal Reserve System. *Id.* at 2. As such, the Government argues that Ms. Sasso was not ineffective for failing to inform Petitioner (or arguing to the Court) that the indictment was defective, and thus, counsel was not ineffective for not filing an appeal of Petitioner's sentence. *Id.*

**A. Jurisdiction**

A claim for relief under § 2255 may be based on a jurisdictional defect. *United States v. Timmereck*, 441 U.S. 780, 783-84 (1979). "[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). The claim that an indictment "fails to state an offense" is a jurisdictional challenge that cannot be waived in a plea agreement. *See United States v. Ruelas*, 103 F.3d 1416, 1418 (9th Cir. 1996).

Here, Petitioner attacks this Court's subject-matter jurisdiction by arguing that his indictment is defective for failing to allege, specifically, that Bank of the West was a member of the Federal Reserve System at the time of his offense. Doc. 27 at 22. Petitioner argues that because 18 U.S.C. § 2113(f) defines "bank" as "any member bank of the Federal Reserve System, and … any institution the deposits of which are insured by the Federal Deposit Insurance Corporation," that his indictment was required to state both Bank of the West's status in the Federal Reserve System and its status with the FDIC if the bank is located and doing business in the continental United States. *Id.* at 28. Petitioner reiterated this argument in his Reply. Doc. 48 at 3-6.

Petitioner's argument has been foreclosed by the Ninth Circuit, which has held that 18 U.S.C. § 2113(f) "contains jurisdictional language that requires the prosecutor to establish a connection to interstate commerce because the statute's coverage is limited to banks that are members of the Federal Reserve System or insured by the FDIC." *United States v. Harris*, 108 F.3d 1107, 1109 (9th Cir. 1997) (emphasis added). As a result, the indictment need not include both a bank's status with the Federal Reserve System and the FDIC to be valid. *Id.* "Federal courts have jurisdiction over a bank robbery offense where the bank was a federally insured institution." *Id.* (citing *United States v. Mohawk*, 20 F.3d 1480, 1482 n. 1 (9th Cir. 1994)). In *Harris*, because the defendant's indictment states that the deposits of the bank he robbed were insured by the FDIC, and the defendant admitted this factual basis for jurisdiction when he pleaded guilty, the Court found his argument that the district court lacked jurisdiction to be without merit. *Id.* The arguments made by Petitioner in this case are no different. Although Petitioner claims that his indictment "failed to allege the national character of the bank" (Doc. 48 at 4, 6), his indictment does state that at the time of his offense, the deposits of Bank of the West were insured by the FDIC. Doc. 1 at 1 (indicating that Bank of the West is "a bank whose deposits were then insured by the Federal Deposit Insurance Corporation"). Therefore, pursuant to the Ninth Circuit's holding in *Harris*, Petitioner's indictment is not defective, the Court has jurisdiction over Petitioner's bank robbery offense, and his motion is DENIED as to this argument. *See* 108 F.3d at 1109. Relatedly, because this argument does not raise a cognizable claim, Petitioner is not entitled to an evidentiary hearing on this issue. *See Howard*, 381 F.3d at 877.

**B. Ineffective Assistance of Counsel**

Under the Sixth Amendment, a criminal defendant is entitled to the effective assistance of counsel at all critical stages of a criminal proceeding, including plea bargaining and sentencing. *Lafler v. Cooper*, ___ U.S. ____, 132 S.Ct. 1376, 1384 (2012). To prevail on an ineffective assistance of counsel claim in a § 2255 motion for habeas relief, the petitioner "must demonstrate that [his] attorney's representation 'fell below an objective standard of reasonableness,' and that [he] suffered prejudice as a result." *United States v. Rodriguez-Vega*, 797 F.3d 781, 786 (9th Cir. 2015) (quoting *Strickland v. Washington*, 466 U.S. 668, 668, 694 (1984)). In *Hill v. Lockhart*, the

Supreme Court extended the two-part *Strickland* test to "challenges to guilty pleas based on ineffective assistance of counsel." 474 U.S. 52, 58 (1985). In these instances, the petitioner must demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

Petitioner raises three grounds in his motion arguing that Ms. Sasso rendered ineffective assistance of counsel. Accordingly, the Court must evaluate each claim under the standard set forth in *Strickland*. *United States v. Aileman*, 710 F.Supp.2d 960, 973 (N.D. Cal. 2008). "In applying and defining this standard substantial deference must be accorded to counsel's judgment." *Premo v. Moore*, 562 U.S. 115, 126 (2011).

1. Indictment

Petitioner first contends that Ms. Sasso was ineffective for failing to raise the argument that the Court lacked jurisdiction over his case because his indictment did not explicitly allege that Bank of the West was a member of the Federal Reserve System. Doc. 27 at 33. He claims that if Ms. Sasso had informed him of the alleged deficiencies in his indictment, he would have elected to proceed to trial rather than plead guilty. *Id.* at 22.

Because Petitioner has framed this claim against Ms. Sasso as having a direct bearing on his decision to plead guilty, it is not barred by the waiver contained within the plea agreement or *Tollett v. Henderson*, 411 U.S. 258, 267 (1973), which holds that "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Nevertheless, as the Court determined that Petitioner's indictment was not defective, it therefore follows that Ms. Sasso did not render constitutionally deficient performance for not raising this legally incorrect argument. *See Maryland v. Kulbicki*, ___ U.S.____, 136 S.Ct. 2, 3 (2015) ("Counsel is unconstitutionally *in*effective if his performance is both deficient, meaning his errors are 'so serious' that he no longer functions as 'counsel,' and prejudicial, meaning his errors deprive the defendant of a fair trial") (emphasis in original). Accordingly, this claim does not amount to a cognizable federal habeas claim of

ineffective assistance of counsel. As to this argument, Petitioner's motion is DENIED and he is not entitled to an evidentiary hearing on this issue. *McMullen*, 98 F.3d at 1159.

2. Sentencing Guidelines

Petitioner additionally claims that Ms. Sasso was ineffective during the sentencing phase of his proceedings. Doc. 27 at 33. Specifically, Petitioner notes that under U.S.S.G. § 4A1.2(e), only sentences that were imposed within fifteen years of the commencement of the charged offense may be counted towards his criminal history computation. *Id.* at 34. The two "crimes of violence" that were used to categorize him as a Career Offender are a 1993 conviction for second-degree armed robbery, for which he was sentenced to three years in prison; and a 2010 conviction for infliction of corporal injury on his spouse, for which he was sentenced to two years in prison. PSR at ¶¶ 31-39; *see also* Doc. 17 at 6. He therefore argues that Ms. Sasso's performance was constitutionally deficient for failing to raise an argument against treating his 1993 conviction as a predicate felony for the career offender enhancement under U.S.S.G. § 4B1.1. Doc. 27 at 34-36.

This claim is barred by the waiver contained in Petitioner's plea agreement, which indicates that he "knowingly and voluntarily agree[d] to waive all Constitutional and statutory rights to … attack collaterally his … sentence, including, but not limited to, filing a motion under 28 U.S.C. § 2255." Doc. 13 at 3. In the federal habeas context, if a petitioner has explicitly waived his right to collateral attack, the only ineffective assistance of counsel claim he is permitted to bring must be based upon the voluntariness of the waiver. *See Lampert*, 422 F.3d at 871; *United States v. Sarabia*, 2016 WL 233166, *8-9 (E.D. Cal. Jan. 20, 2016) (where a habeas petitioner has waived his right to collateral attack, "[t]o the extent that a habeas petitioner seeks to claim he received ineffective assistance of counsel premised on his attorney's allegedly faulty advice, he may do so only based upon that advice as it related to the decision to enter his guilty plea."). Petitioner's allegations against Ms. Sasso refer to her performance during the sentencing phase of his proceedings, not his decision to sign the plea agreement and waiver. Doc. 27 at 16. Thus, by his plea agreement (*see* Doc. 13 at 3), Petitioner has waived his right to have this Court review any claims that do not relate to the voluntariness of the agreement. *Lampert*, 422 F.3d at 871.

Moreover, even if the claim were not barred, the Court would find that Petitioner's criminal history was properly calculated. Petitioner correctly notes that U.S.S.G. § 4A1.2(e) states that prior sentences must have been imposed within fifteen years of the instant offense to be counted towards his criminal history computation. However, U.S.S.G § 4A1.2(e) also directs that "*any* prior sentence of imprisonment exceeding one year and one month, *whenever imposed*, that resulted in [Petitioner] being incarcerated during any part of such fifteen-year period" should count towards his criminal history. U.S.S.G. § 4A1.2(e) (emphasis added). Moreover, under U.S.S.G. § 4A1.2(k)(A), "[r]evocation of … parole … may affect the time period under which certain sentences are counted as provided in § 4A1.2(d)(2) and (e)." To determine the applicable time period, the date of last release from any incarceration totaling more than one year and one month should be used. *See* U.S.S.G. § 4A1.2(k)(A).

Petitioner was initially convicted on February 4, 1993, sentenced to a three-year term of imprisonment, paroled, and then violated his parole several times until he was discharged on February 19, 2004. PSR at ¶ 31. His most recent violation of parole for the 1993 conviction occurred on July 7, 2002, and he returned to prison on that date. *Id.* Thus, according to U.S.S.G. §§ 4A1.2(e) and 4A1.2(k)(A), although he was initially convicted in 1993, the 1993 conviction resulted in him being incarcerated during the fifteen-year period that preceded July 24, 2014—the commencement of the underlying offense in these proceedings. *See United States v. Semsak*, 336 F.3d 1123, 1128 (9th Cir. 2003) (finding that a parole revocation within the fifteen-year period "makes the original sentence fall within the fifteen-year period" so long as the original sentence exceeded thirteen months). As this claim does not present a cognizable basis for relief, Petitioner's motion is DENIED on this ground, and the Court declines to grant Petitioner an evidentiary hearing on this matter. *McMullen*, 98 F.3d at 1159.

3. Appeal

Petitioner next alleges that Ms. Sasso's performance was constitutionally deficient because of her failure to file a notice of appeal in his case. Doc. 27 at 36. Specifically, citing *Roe v. Flores Ortega*, 528 U.S. 460, 480 (2000), Petitioner states that he had "reasonably demonstrated to counsel

that he was interested in appealing," and argues that Ms. Sasso therefore failed to render her "constitutionally imposed duty to consult with [him] about an appeal." *Id.*

The Government did not adequately address this argument in its first opposition brief. *See* Doc. 29. As a result, the Court ordered the Government to respond to Petitioner's argument in light of the Ninth Circuit's decision in *United States v. Sandoval-Lopez*, 409 F.3d 1193, 1197 (9th Cir. 2003), which holds that an attorney's failure to heed a criminal defendant's instruction to file a notice of appeal amounts to ineffective assistance of counsel, even if the defendant has expressly waived his right to appeal. Doc. 34. Specifically, *Sandoval-Lopez* directs district courts as follows when such a claim is brought in a habeas petition:

> [T]wo things can happen. The district court can hold an evidentiary hearing to decide whether petitioner's allegation is true, and if it is, vacate and reenter the judgment, allowing the appeal to proceed. Or, if the [Government] does not object, the district court can vacate and reenter the judgment without a hearing and allow the appeal to proceed, assuming without deciding that the petitioner's claim is true.

409 F.3d at 1198-99; *see also Sperling v. United States*, No. 08-CV-5198 AHM, 2009 WL 4349810 at *3, (C.D. Cal. Nov. 25, 2009) ("*Sandoval-Lopez* essentially reduces the *Strickland* analysis to a single two-part question: did the petitioner instruct his attorney to file a notice of appeal and did the attorney fail to do so? A "yes" answer to both parts of this question would, in principle determine that Petitioner is entitled to relief. That question must be resolved through an evidentiary hearing.").

Upon the Government's motion (Doc. 36), the Court issued an order finding a waiver of Petitioner's attorney-client privilege for purposes of resolving his § 2255 motion, permitting Ms. Sasso to discuss the claims it raises. Doc. 38. Subsequently, Ms. Sasso filed her sworn declaration, in which she averred as follows:

> On November, 17, 2014, [Petitioner] pled guilty pursuant to a plea agreement with an appellate waiver stating that "[he] knowingly and voluntarily agrees to waive all Constitutional and statutory rights to appeal his conviction and sentence." Prior to him signing the plea agreement, I reviewed the appellate waiver with [Petitioner]. He was sentenced on February 23, 2015.
>
> When a defendant notifies his/her attorney prior to the date of sentencing that he/she wants to appeal his case notwithstanding the appellate waiver, it is my understanding that it is standard practice at the sentencing hearing after the defendant has been sentenced for the

> trial attorney to ask the District Court to be relieved and to appoint a CJA panel attorney to handle the appeal. The newly assigned appellate attorney is then responsible for filing the Notice of Appeal with the District Court within fourteen days after the entry of judgment pursuant to the Federal Rules of Appellate Procedure, Rule 4(b)(1)(A).
>
> When a defendant does not notify his/her counsel of his/her desire to appeal until after the sentencing hearing has concluded, then his/her assigned trial counsel files the Notice of Appeal within fourteen days after the entry of judgment and simultaneously files a Motion to Withdraw as Counsel pursuant to Ninth Circuit Rule 4-1(c).
>
> Neither of the aforementioned procedures were invoked in [Petitioner]'s case as I was not aware either prior to or after sentencing that he wished to file an appeal notwithstanding the appellate waiver in his plea agreement.

Doc. 42.

The Government then filed a second opposition brief directed towards Petitioner's ineffective assistance of counsel claim that Ms. Sasso failed to file a requested notice of appeal. Doc. 45. Therein, the Government notes that Ms. Sasso's declaration indicated that Petitioner did not alert Ms. Sasso that he wanted to file an appeal, which contradicts Petitioner's allegations. *Id.* at 2-3. As a result, the Government requests an evidentiary hearing on the matter.[4] *Id.* at 3.

Petitioner filed a reply, reiterating that he had asked Ms. Sasso to file an appeal in his case, both before and after his sentencing hearing, and reiterating his request for an evidentiary hearing. Doc. 48 at 8-9.

Based on the foregoing, the Court finds that an evidentiary hearing is required as to this claim, as the record does not "conclusively show that [Petitioner] is entitled to no relief." *See Howard*, 381 F.3d at 877. "To earn the right to a hearing, therefore [Petitioner] [i]s required to allege specific facts, which, if true, would entitle him to relief." *McMullen*, 98 F.3d at 1159. Here, the record reflects a factual dispute between Petitioner and Ms. Sasso as to whether Petitioner actually told Ms. Sasso to help him file an appeal in his case, and whether she was aware of and refused this request. Furthermore, the Court understands the Government's request for an evidentiary hearing as an objection to the Court "assuming without deciding" the truth of Petitioner's allegations, and permitting Petitioner's appeal to proceed. *See Sandoval-Lopez*, 409

[4] The Court specifically asked the Government to respond, with relevant authority, as to (1) whether it believes an evidentiary hearing or any other evidentiary showing is necessary as to the limited issue of Ms. Sasso's alleged failure to file the requested notice of appeal; and (2) whether it objects to the Court vacating and reentering the judgment to allow the appeal to proceed. Doc. 34.

F.3d at 1198-99. In the absence of waiver from the Government, the Court must therefore hold an evidentiary hearing to determine whether Petitioner "really did tell [Ms. Sasso] to appeal and [Ms. Sasso] refused though [Petitioner] demanded it." *Id*. at 1198; *see, e.g., Boudoin v. United States*, No. CV 12-727270 PSG, 2013 WL 1248678, at *2-3 (C.D. Cal. Mar. 26, 2013); *Zewdie v. United States*, No. CR-F-02-5440 OWW, 2008 WL 5136077, at *2-3 (E.D. Cal. Dec. 8, 2008); *United States v. Cruz-Ayon*, No. CR 03-1096-PHX-SMM (BPV), 2007 WL 707126, at *1 (D. Ariz. Mar. 5, 2007). Accordingly, the Court GRANTS Petitioner's unopposed request for an evidentiary hearing that will be limited to resolving this specific factual dispute. *See Sandoval-Lopez*, 409 F.3d at 1199.

**APPLICATION TO PROCEED IFP**

A motion under § 2255 is filed as part of the underlying criminal prosecution, and therefore does not require payment of a filing fee as does a petition for a writ of habeas corpus. *See* 28 U.S.C. § 2255. Because Petitioner was not required to pay any fees to file this motion, there is no need for Petitioner to proceed IFP. The Court therefore DENIES Petitioner's request to proceed IFP.

**CONCLUSION AND ORDERS**

For these reasons, **IT IS HEREBY ORDERED** that:

1. Petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Docs. 24, 27) is **DENIED** as to his claims regarding the Court's jurisdiction and his claims that Ms. Sasso rendered ineffective assistance of counsel with regard to his indictment and the sentencing guidelines;
2. Petitioner's unopposed request for an evidentiary hearing to resolve his claim that he told Ms. Sasso that he wanted to appeal his case and that she refused to do so is **GRANTED**. This evidentiary hearing is scheduled for October 3, 2016 at 1:30 p.m.;
3. Petitioner's motion to proceed IFP (Doc. 28) is **DENIED**.

IT IS SO ORDERED.

Dated: **September 19, 2016**

**/s/ Lawrence J. O'Neill**
UNITED STATES CHIEF DISTRICT JUDGE